[Crim. No. 6161.   In Bank.   Feb. 14, 1958.]

THE PEOPLE, Respondent, v. ELMER WILBURN et al., Defendants; OSWALD R. ATKINSON, Appellant.

Morris Lavine, under appointment by the Supreme Court, and Nathan Kline for Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), Erling J. Hovden, Chief Deputy Public Defender, and Richard B. Goethals, Deputy Public Defender, as Amici Curiae on behalf of Appellant.

Edmund G. Brown, Attorney General, and Miles J. Rubin, Deputy Attorney General, for Respondent.

CARTER, J.—Defendants Wilburn and Atkinson were charged in four counts: Count 1, murder of Walter James and counts 2, 3 and 4, armed robbery; it was charged also that they were armed with revolvers during the commission of the crimes. They pleaded not guilty to all counts but later pleaded guilty to the armed robbery (counts 2, 3 and 4) and

admitted being armed with revolvers when the robberies were committed. The killing of James occurred in the commission of the robberies. Defendants were found guilty of first degree murder and the jury fixed the penalty at life imprisonment. Defendant Atkinson only appeals.

Between 9:30 and 10 p. m. on June 4, 1956, defendants approached a liquor store which they planned to rob and which was being operated by Willie James, a clerk. Wilburn who entered the store and purchased a soft drink observed three people in the store—Willie, his brother Walter, who was helping Willie, and Thomas Wright, a patron. Wilburn left the store and suggested to Atkinson that the time was not right since there were three people in the store but told Atkinson that none of the three had a gun and Atkinson suggested they proceed as planned. Defendants entered the store, loaded revolvers in their hands, Wilburn with a .32 caliber Smith and Wesson and Atkinson with a .38 caliber Colt. Atkinson told the persons in the store to keep their hands still, go to the back of the store and keep their backs toward the front of the store or they would get a bullet. The three went to the rear of the store to the storage room and were forced to bend over liquor cases there and valuables were removed from their persons. According to Atkinson's instructions, Willie and Wright then lay face down on the floor and were warned that if they moved they would get a bullet in the back. Wilburn took Walter to the cash register toward the front of the store, and had him open the register and put the money in a paper bag. About that time Thomas Watson, a retired police officer, armed with a loaded .45 caliber Colt automatic on his person, entered the store to make a purchase. He saw Wilburn with a gun and Walter behind the counter at the cash register and Atkinson standing in the customers' aisle opposite the register. Watson was told by Atkinson to go to the back of the store and he took a couple of steps in that direction, having sized up the situation as a hold-up. Atkinson glanced toward the front of the store and when he turned back toward Watson the latter had drawn his automatic which he fired, hitting Atkinson, spinning him around. Watson stepped over to a soft drink case and fired again at Atkinson. In the meantime Atkinson was firing his revolver. Watson moved to another area and fired two shots at Wilburn. A few seconds later defendants fled from the store, and Walter stumbled toward Watson and fell. Defendants were later apprehended. Five shots were fired by

Atkinson, none by Wilburn. An examination of the store accounted for four of Atkinson's bullets.

█ Atkinson contends that the evidence is insufficient to establish that a bullet from his gun caused the death of Walter James; that it is inherently improbable that it came from his gun. There is no question but that the killing occurred in the commission of a robbery being perpetrated by Atkinson and Wilburn and that therefore it was murder of the first degree (see Pen. Code, §§ 187, 189) if shown that Walter was shot by Atkinson, and the question is not presented as to whether it would nevertheless be first degree murder although Walter was killed by a shot from Watson's gun, he being the only other one to fire a gun.

The scene of the robbery is a liquor store with its length running east and west. The customers' entrance to the store was at the south end of the east side. Extending west along the south wall is a beer display, stock rack and liquor cases. Immediately north of that is a customers' aisle. Along the north side of the aisle and extending west is a cigar counter, a merchandising counter on the west end of which is a cash register, and then a display refrigerator for soft drinks. At the end of that is an aisle running north for access to shelves of liquor and a storage room along the north side of the store. Along the wall to the west of that aisle is a refrigerator and more cases. Behind and to the north of the counter and soft drink refrigerator is an aisle called clerk's aisle and then a row of shelves for liquor display against the wall separating the store proper from the storage room. As seen, access from the storage room is gained from the north-south aisle.

As before stated, Atkinson and Wilburn entered the store carrying guns and had Willie James and Wright lie face down in the storage room. Wilburn and Walter went to the cash register in the aisle between it and the liquor shelves, standing side by side. Walter was to the east of but right next to the cash register drawer. Wilburn was east of him. When Watson entered, Atkinson was in the customers' aisle and in front of the cash register counter and Wilburn and Walter were standing at the counter in the clerk's aisle. Watson was facing northwest. He was southeast of Wilburn and Walter. He took two paces going between Atkinson and the counter and Atkinson, hearing a noise at the entrance door, turned his head that way. When he turned back Watson had his gun pointed at him and Watson fired, striking Atkinson in the stomach. That spun Atkinson around toward his left and

Atkinson was shooting generally in the direction of Walter as he spun. Additional shots were thereafter fired as above mentioned. There was a cigarette case above the cash register. While the evidence is not entirely clear that a bullet from Atkinson's gun could have struck Walter, there is expert testimony to the effect that the kind of bullets used by Atkinson would leave more copper residue in passing through cloth than those fired by Watson, and the residue in Walter's clothes where the bullet passed through was considerably like that which would be caused by Atkinson's rather than Watson's bullets. It is true that Watson fired at Wilburn when he was with Walter but saw no visible effects from his shots. Walter was partly stooped over after Watson fired but how far does not appear. Walter did not fall until about 20 seconds after the shooting started. The autopsy revealed that the fatal shot had struck Walter in the chest 19¾ inches below the top of his head (Walter was 5 feet 6½ inches tall); it traveled upward through his body. There is evidence that if Walter had been struck by a .45 caliber bullet he would spring or recoil from the impact; but as seen, Walter did neither. Therefore, it is reasonable to infer that the bullet which hit Walter's upraised arm while he was facing the rear of the store caused him to turn and expose his side to Atkinson's line of fire. Rather than being impossible that a shot from Atkinson's gun killed Walter, the evidence points to that conclusion and the jury so found. While contrary inferences could have been drawn from the evidence that Watson shot at Wilburn who was standing next to Walter, such conflicts were for the jury to resolve.

■ Defendant complains that the deputy district attorney was guilty of prejudicial misconduct but we fail to find prejudicial error. On cross-examination of Atkinson he was asked if he did not fire a shot (as he had testified), how it happened that there were five discharged cartridges in his gun, to which he replied that he did not know—did not know what happened after Watson's .45 caliber bullet struck him, to which the deputy district attorney replied "I feel sorry for you and your .45 slug, but I feel sorrier for the man that was killed.

"Now, will you answer my question?"

Atkinson's counsel objected that the deputy was quarreling with the witness to which the court replied, "[Y]ou are getting argumentative." No request was made for the court to instruct the jury to disregard the deputy's remarks. It

was nothing more than the give and take found in a trial and we find no prejudicial error.

■ Atkinson contends that he cannot be guilty because he was unconscious after he was shot by Watson. Assuming that would be a defense in a felony-murder situation such as we have here, there is ample evidence that Atkinson was not unconscious. Atkinson fled from the scene of the crime, jumped a fence and hid. Later he walked 15 or 20 blocks, spoke to several people and got a ride for some distance and paid the owner of the car who furnished him the ride.

■ Defendant claims that sufficient consideration was not given to his motion for a new trial. When sentence was to be pronounced, defendant's counsel said that defendant Atkinson felt he had not been adequately represented and wanted the public defender, but that he felt that he had adequately represented Atkinson. The court agreed that Atkinson had adequate and competent representation and the record clearly bears this out. The court denied the motion to substitute the public defender and Atkinson's counsel moved for a new trial. It was not argued as no argument was offered by Atkinson's counsel, and the motion was denied. We cannot say that the court failed to give adequate consideration to the motion for a new trial. The presumption is to the contrary (Code Civ. Proc., § 1963, subd. 15).

Since there is sufficient evidence to show that Atkinson's shot, rather than Watson's, killed Walter, it is unnecessary to consider the question of whether Atkinson could be guilty of first degree murder under the felony-murder rule if the fatal shot was fired from Watson's gun. The judgment and order denying a new trial are affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied March 12, 1958.